2:21-CV-480-MHT-SMD

# MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

RECEIVED

| United States District Court | Middle District of Alabama |
|---|---|
| 2021 JUL 19 A 11: 30 | |
| Name (under which you were convicted): DEBRA P. HACKETT, CLK Docket or Case No.: Robert Tycell Lockhart U.S. DISTRICT COURT MIDDLE DISTRICT ALA | |
| Place of Confinement: **FCI Talladega, PO Box 1000, Talladega, AL 35160** | Prisoner No.: **17322-002** |
| UNITED STATES OF AMERICA<br><br>v.   **CYRUS PHYFIER** | |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   **United States District Court, Middle District of Alabama, Montgomery Division**

   (b) Criminal docket or case number (if you know): **2:17-cr-00482-3**

2. (a) Date of the judgment of conviction (if you know): **August 23, 2019**

   (b) Date of sentencing: **December 5, 2019**

3. Length of sentence: **Concurrent 300-month on Counts One – Six and Eight and Ten, a concurrent 120-month**

   **on Count Seven, and a consecutive 60-month on Count Nine for a total sentence of 360 months.**

4. Nature of crime (all counts): ***Counts One, Two, and Four* – distribution of a quantity of cocaine**

   **base, in violation of 21 U.S.C. Sections 841 (a) (1) and (b) (1) (C); and *Count Six* -- felon in**

   **possession of a firearm, in violation of 18 U.S.C. Sections 922 (g) (1) and 924 (a) (2); Count Nine – possession of a firearm in**

1

**furtherance of a drug trafficking crime in violation of 18 U.S.C. Section 924 (c).**

5. (a) What was your plea? (Check one) (1) Not guilty **X**      (2) Guilty

(3) Nolo contendere

6. (b) If you entered a guilty plea to one count of the indictment, and a

not guilty plea to another count of the

indictment, what did you plead guilty to?

**Petitioner had a jury trial on all counts in which he was charged.**

7. If you went to trial, what kind of trial did you have? (Check one)

Jury **X**          Judge only

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?

Yes **X**          No

8. Did you appeal from the judgment of conviction?

Yes **X**          No

9. If you did appeal, answer the following:

(a) Name of court: **United States Court of Appeals for the**

**Eleventh Circuit**

(b) Docket or case number (if you know): **19-14944**

(c) Result: **Affirmed**

(d) Date of result (if you know): **January 5, 2021**

(e) Citation to the case (if you know): **Do not know**

(f) Grounds raised: **1. The district court's prohibition of Appellant**

**Phyfier's attempt at a defense to the 18 U.S.C. § 922(g)**

**charge by way of evidence of a state pardon and issuance of a pistol**

**license was error; 2. The government failed to show**

**that the warrantless search of Appellant Phyfier's friend's apartment**

**was part of a valid protective sweep or with proper**

**consent; 3. The presentation of other acts evidence at trial constituted**

**plain error.**

(g) Did you file a petition for certiorari in the United States

Supreme Court?      Yes          No **X**

10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or

applications concerning this judgment of conviction in any court?

Yes         No **X**

11.   If your answer to Question 10 was "Yes," give the following information:

(a)(1) Name of court: **NA**

(2) Docket or case number (if you know): **NA**

(3) Date of filing (if you know): **NA**

(4)  Nature of the proceeding: **NA**

(5)  Grounds raised: **NA**

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes        No **NA**

(7) Result: **NA**

(8) Date of result (if you know): **NA**

(b) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:          Yes             No **NA**

(c) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: **NA**

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws or treaties of the United States.

(A) GROUND ONE: Whether appellate counsel provided ineffective

assistance of counsel for the failure to raises a <u>Faretta</u> claim on direct appeal?

SUPPORTING FACTS: (Do not argue or cite law. Just state the

specific facts that support your claim.):

**See Memorandum of Supporting Facts**

(b)  Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes        No  **X**

(2) If you did not raise this issue in your direct appeal, explain why:

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes      No **X**

(2) If your answer to Question (c) (1) is "Yes," state:

Type of motion or petition: **NA**

Name and location of the court where the motion or petition was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

(3) Did you receive a hearing on your motion, petition, or application? Yes      No **NA**

(4) Did you appeal from the denial of your motion, petition, or application? Yes      No **NA**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes      No **NA**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

Result (attach a copy of the court's opinion or order, if available): **NA**

(7) If your answer to Question (c)(4) or Question (c)(5) is "no," explain why you did not appeal or raise this issue:

(B) GROUND TWO: **Appellate counsel provided ineffective assistance of counsel for the failure to appeal the insufficiency of the evidence for all counts due to the leading inquiries by the Government on direct.**

SUPPORTING FACTS: (Do not argue or cite law. Just state the specific facts that support your claim.):

**See Memorandum of Supporting Facts**

(b) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this

4

issue? Yes          No **X**

(2) If you did not raise this issue in your direct appeal, explain why:

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or
application?    Yes              No **X**

(2) If your answer to Question (c) (1) is "Yes," state:

Type of motion or petition: **NA**

Name and location of the court where the motion or petition was
filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

(3) Did you receive a hearing on your motion, petition, or application?
Yes              No **NA**

(4) Did you appeal from the denial of your motion, petition, or
application?    Yes              No **NA**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue
in the appeal? Yes              No **NA**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

Result (attach a copy of the court's opinion or order, if available):
**NA**

(7) If your answer to Question (c)(4) or Question (c)(5) is "no," explain
why you did not appeal or raise this issue:

(C) GROUND THREE: **Whether, on direct appeal, appellate counsel**

**provided ineffective assistance of counsel for not**

**challenging the relevant conduct attributed to Petitioner at sentencing?**

SUPPORTING FACTS: (Do not argue or cite law. Just state the

specific facts that support your claim.):

**See Memorandum of Supporting Facts**

5

(b)  Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes _____ No **X**

(2) If you did not raise this issue in your direct appeal, explain why:

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?   Yes _____ No **X**

(2) If your answer to Question (c) (1) is "Yes," state:

Type of motion or petition: **NA**

Name and location of the court where the motion or petition was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

(3) Did you receive a hearing on your motion, petition, or application? Yes _____ No **NA**

(4) Did you appeal from the denial of your motion, petition, or application? Yes _____ No **NA**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes _____ No **NA**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

Result (attach a copy of the court's opinion or order, if available): **NA**

(7) If your answer to Question (c)(4) or Question (c)(5) is "no," explain why you did not appeal or raise this issue:

(C) GROUND THREE: **Whether, on direct appeal, appellate counsel**

**provided ineffective assistance of counsel for not**

**challenging the relevant conduct attributed to Petitioner at sentencing?**

SUPPORTING FACTS: (Do not argue or cite law. Just state the

specific facts that support your claim.):

**See Memorandum of Supporting Facts**

(b)  Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?  Yes          No  **X**

(2) If you did not raise this issue in your direct appeal, explain why:

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?     Yes                    No **X**

(2) If your answer to Question (c) (1) is "Yes," state:

Type of motion or petition: **NA**

Name and location of the court where the motion or petition was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

(3) Did you receive a hearing on your motion, petition, or application? Yes              No **NA**

(4) Did you appeal from the denial of your motion, petition, or application?  Yes                 No **NA**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes                 No **NA**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: **NA**

Docket or case number (if you know): **NA**

Date of the court's decision: **NA**

Result (attach a copy of the court's opinion or order, if available): **NA**

(7) If your answer to Question (c)(4) or Question (c)(5) is "no," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

7

**This is Petitioner's first post-conviction motion pursuant to 28 U.S.C. Section 2255.**

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?

   Yes _____   No **X**

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.  **NA**

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a) At preliminary hearing: **NA**

   (b) At arraignment and plea: **NA**

   (c) At trial: **Cyrus Phyfier handled his case pro se.  David W. Vickers was appointed as stand-by counsel.**

   (d) At sentencing: **Same as (c) above**

   (e) On appeal: **Thomas M. Goggans, 2030 East Second Street, Montgomery AL 36106**

   (f) In any post-conviction proceeding: **NA**

   (g) On appeal from any ruling against you in a post-conviction proceeding: **NA**

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

   Yes **X**      No _____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

   Yes _____      No **X**

   (a) If so, give name and location of court that imposed the other sentence you will serve in the future: **NA**

   (b) Give the date the other sentence was imposed: **NA**

   (c) Give the length of the other sentence: **NA**

   (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in

the future? **NA**

18. TIMELINESS OF MOTION: If your judgment of conviction became

final over one year go, you must explain why the one-year statute of limitations

as contained in 28 U.S.C. Section 2255 does not bar your motion[1].

**The instant action is being filed within one year and ninety days after the direct**

**appeal was affirmed on January 5, 2021**.  Therefore, Movant asks

that the Court to grant the following relief: **Vacate the sentences on all counts**

or grant any other relief to which movant

may be entitled**.**

I declare (or certify, verify, or state) under penalty of perjury that the

foregoing is true and correct.

Executed (signed) on  *July 16, 2021*  (date).


Cyrus Phyfier # 17322-002
FCI Talladega/PO Box 1000
Talladega, AL 35160

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that: A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of – (1) the date on which the judgment of conviction became final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

RECEIVED

***IN FORMA PAUPERIS DECLARATION***

2021 JUL 19  A 11: 31

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## UNITED STATES DISTRICT COURT FOR THE

## MIDDLE DISTRICT OF ALABAMA

## MONTGOMERY DIVISION

*****

I certify that I am indigent and unable to pay the cost of the instant action and respectfully request to be allowed to proceed in forma pauperis.

Date: 7-16-21

Cyrus Phyfier, pro se

RECEIVED

**UNITED STATES DISTRICT COURT FOR THE** 2021 JUL 19  A 11: 31

**MIDDLE DISTRICT OF ALABAMA**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**MONTGOMERY DIVISION**

**CIVIL ACTION NO.:** _2:21 -cv-480 -mH T-smD_

**CRIMINAL NO.: 2:17-cr-00482-03**

**UNITED STATES OF AMERICA,**
**Respondent,**

**vs.**

**CYRUS PHYFIER,**
**Petitioner.**

---

## MEMORANDUM OF SUPPORTING FACTS

---

      **COMES NOW**, the Petitioner, Cyrus Phyfier, and **REQUESTS** this Honorable

Court to grant the relief requested in the instant action

pursuant to 28 U.S.C. Section 2255.  Petitioner is alleging four issues for relief and they

are: 1) Appellate counsel provided ineffective assistance of counsel for the failure to

raises a Faretta claim on direct appeal?; 2) Appellate counsel provided ineffective

assistance of counsel for the failure to appeal the insufficiency of the evidence for all

counts due to the leading inquiries by the Government on direct; 3) On direct appeal,

appellate counsel provided ineffective assistance of counsel for not challenging the

relevant conduct attributed to Petitioner at sentencing?; and, 4) Appellant Counsel provided ineffective assistance of counsel for not appealing the illegal sentence for Count Seven of the Second Superseding Indictment.  On appeal, Petitioner was represented by Thomas M. Goggans, who prepared and filed the appellant brief for Petitioner.

## STATEMENT OF THE CASE

Petitioner was indicted on ten counts of a ten-count Second Superseding Indictment filed on July 17, 2019.  **DKT # 582**.  Count One charged conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, 280 grams or more of cocaine base, and a quantity of marijuana, in violation of 21 U.S.C. Sections 846, 841 (a) (1) and (b) (1) (A), (B), and (C); Counts Two thru Six charged distribution of a quantity of cocaine base in violation of 21 U.S.C. Sections 841 (a) (1) and (b) (1) (C); Count Seven charged distribution of marijuana, in violation of 21 U.S.C. Section 841 (a) (1) and (b) (1) (C); Counts Eight and Ten charged felon in possession of a firearm, in violation of 18 U.S.C. Sections 922 (g) (1) and 924 (a) (2); and, Count Nine charged possession of a firearm in furtherance of a drug -trafficking offense, in violation of 18 U.S.C. Section 924 (c) (1).  **Id**.

Before the trial began, Petitioner stated his desire to have another lawyer to represent him; since, he and his court-appointed counsel, David W. Vickers, were having conflict.  After a hearing was held on August 19, 2019, and the Court refused to appoint another counsel for Petitioner; since, he had appointed two different attorneys already. Petitioner did not want to go to trial with Vickers, but he knew he could not handle a trial on his own; so, he wanted to assist Vickers in handling the case and trial.  But the Court decided it was either Vickers would handle the trial or Petitioner could represent himself. Petitioner decided to go without Vickers.  On August 20, 2019, the District Court issued

12

an Order finding that Petitioner having knowingly and voluntarily waived his right to

counsel on the record on August 19, 2019, was permitted to represent himself, effective

August 19, 2019, and that Attorney David Windell Vickers is appointed as standby

counsel. **DKT # 620**. After a four-day jury trial that concluded on August 23, 2019,

Petitioner was found guilty on all ten counts in which he was charged. **DKT # 629**. At

sentencing on December 5, 2019, Petitioner again represented himself with Wicker as

standby counsel. **DKT # 758**. He was sentenced to concurrent 300-month sentences on

Counts 1-7, a 120-month on Counts 8 and 10 to be served concurrently to Counts 1 – 7,

and a 60-month sentence on Count 9 to be served consecutive to the sentences on all

other counts. **DKT # 763/790**. Petitioner was also sentenced to terms of supervised

release of 10 years on Count One, 6 years on Counts Two thru Six; 4 years on Count

Seven, 5 years on Counts Eight and Ten, and _ years on Count Nine, with all terms

imposed to be served concurrently. **Id**.

Petitioner's direct appeal to the Eleventh Circuit was affirmed on January 5, 2021

by an unpublished per curiam opinion. **See United States v Phyfier, No. 19-14944 (11th**

**Cir. Jan. 5, 2021).**

## APPLICABLE CASE LAW

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right "to have the assistance of counsel for his defense," and the United

States Supreme Court has recognized that, "the right to counsel is the right to the

effective assistance of counsel." McMann v Richardson, 397 U.S. 759, 771 n.14 (1970);

Marzullo v Maryland, 561 F.2d 540 (4th Cir. 1977); and, Waters v Thomas, 46 F.3d 1506,

1510 (11th Cir. 1995); and, Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008). In

Strickland v Washington, 466 U.S. 668 (1984), the Supreme Court held that criminal

defendants have a Sixth Amendment right to "reasonably effective" legal assistance, id., at 687, and announced a now-familiar test: A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness," id., at 688, and (2) that counsel's deficient performance prejudiced the defendant, id., at 694.  The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  A person alleging ineffective assistance of counsel (either at the trial level or on appeal) must demonstrate not only that counsel's representation fell below an objective standard of reasonableness, but also demonstrate prejudice. See Strickland, 466 U.S. at 687-96; see also Hill v. Lockhart, 474 U.S. 52,58 (1985); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues."  See Jones v. Barnes, 463 U.S. 745, 752 (1983).  The Supreme Court has long recognized that counsel provides the benefit of "examination into the record, research of the law, and marshalling of arguments" on a client's behalf.  Douglas v. People of State of Cal., 372 U.S. 353, 358 (1963).  "Access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case . . .'"  Strickland, 466 U.S. at 685 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275 (1942)).  "Counsel . . . has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process."  Id. at 688.  Counsel's competence to make strategic decisions at trial is presumed by the courts.  See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (citing Strickland, 466 U.S. at 689)).  The Supreme Court has also acknowledged that "[t]here are countless ways to provide effective assistance in any given case."  Strickland, 466 U.S. at 689.

14

Under the procedural-default rule, a criminal defendant generally must raise available claims of error on direct appeal. McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011). If he does not, the rule bars him from raising those claims in a Section 2255 motion to vacate. Id.; see also Parks v. United States, 832 F.2d 1244, 1246 & n.3 (11th Cir. 1987) (enforcing the rule where a defendant raised new claims of sentencing error on Section 2255 review). A defendant may overcome procedural default by showing cause and prejudice: "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." McKay, 657 F.3d at 1196 (quoting Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004)).

## ARGUMENT

**Ground One:** Appellate counsel provided ineffective assistance of counsel for the failure to raises a Faretta claim on direct appeal.

**Supporting Facts:** The Sixth Amendment includes an implicit right to self-representation, and a defendant cannot be compelled to accept the assistance of counsel. Faretta v. California, 422 U.S. 806, 819 (1975). To invoke the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel. Id. at 835. "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a . . . hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." United States v. Stanley, 739 F.3d 633, 645 (11th Cir. 2014). This so-called Faretta hearing should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835, 95 S. Ct. at 2541. But the Faretta hearing is merely "a means to the end"

15

of ensuring that a defendant's waiver is knowing and voluntary. Stanley, 739 F.3d at 645.

In the instant matter, Petitioner did not knowingly and voluntarily waive his right to the assistance of counsel; he knowingly and voluntarily waived his right to be represented by David Vickers. The purpose of the hearing was to determine whether Vickers would be replaced with new counsel. After a hearing was held on August 19, 2019, and the Court refused to appoint new counsel for Petitioner; since, two different attorneys had been appointed already. Petitioner did not want to go to trial with Vickers, but he knew he could not handle a trial on his own; so, he wanted to assist Vickers in handling the case and trial. But the Court decided it was either Vickers would handle the trial or Petitioner could represent himself. Petitioner decided to go without Vickers. On August 20, 2019, the District Court issued an Order finding that Petitioner having knowingly and voluntarily waived his right to counsel on the record on August 19, 2019, was permitted to represent himself, effective August 19, 2019, and that Attorney David Windell Vickers is appointed as standby counsel. **DKT # 620**.

This Circuit considers eight factors when determining whether a waiver of the right to counsel was knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health;
> (2) the extent of the defendant's contact with lawyers prior to trial; (
> 3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties;
> (4) the defendant's understanding of rules of procedure, evidence and courtroom decorum;
> (5) the defendant's experience in criminal trials;
> (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant;
> (7) mistreatment or coercion of the defendant; and
> (8) whether the defendant was trying to manipulate the events of the trial.

Id. at 645–46 (citing Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065–67 (11th Cir.

1986)).  Though a defendant's waiver must be knowing and voluntary at the time he

makes it, we may "look to subsequent events" to find "evidence of what would have been

true when a defendant first waived his rights."  Id. at 646; see also Jones v. Walker, 540

F.3d 1277, 1295 (11th Cir. 2008) (en banc) ("We review Jones' performance during trial,

not because we wish to determine whether his trial conduct was good or bad, but because

his performance at trial provides some circumstantial evidence of what he knew at the

time he waived his right to counsel.").  See, e.g., United States v. Evans, 478 F.3d 1332,

1339–40 (11th Cir. 2007); Nelson v. Alabama, 292 F.3d 1291, 1297–1301 (11th Cir.

2002).

Examining the record with the eight Fitzpatrick factors in mind, and nearly every

factor points in one direction:  Petitioner did not knowingly and voluntarily waive his

right to counsel.  For that reason, his appellate counsel's failure to raise a Faretta

argument on appeal meets Strickland's prejudice prong.  First, Petitioner was fifty-one

years old at the time of his trial, had obtained a GED and had no history of mental- or

physical-health issues.  Second, Petitioner's contact with counsel prior to his decision to

proceed pro se was very rocky and intense.  Third, as demonstrated by his comments and

performance at trial, it is clear that Petitioner did not have a "clue" about the law, the

nature of the offenses, or the penalties he faced.  Fourth, Petitioner's lack of

understanding of rules of procedure, evidence and courtroom decorum was evident

throughout the trial with Petitioner being instructed several times about the proper

procedures, and his lack of knowledge to object to inappropriate and illegal conduct by

the Government during its presentation of evidence.  See Stanley, 739 F.3d at 646 ("[W]e

17

consider how ably a pro se defendant performed in presenting his case as evidence of his understanding of rules of procedure, evidence, and courtroom decorum.").

Fifth, even though, Petitioner had criminal history, he had never handled a jury trial and had only been involved in only one trial and, he had the assistance of counsel. Therefore, Petitioner's understanding of a criminal trial was limited to his review of Judge Judy and old Perry Mason clips. Greene v. United States, 880 F.2d 1299, 1304 (11th Cir. 1989) (remarking that a defendant's "substantial experience with the criminal justice system" is "a factor which weighs in favor of a finding of effective waiver"). Sixth, standby counsel was appointed, but stand-by counsel did almost nothing to assist Petitioner from being abuse by the Government in its presentation of evidence. Seventh and eighth, the record contains no evidence either that Petitioner was mistreated or coerced into waiving his right to counsel or that he waived counsel in an effort to manipulate the proceedings. Telling Petitioner that it would be a bad idea for him to represent himself was not enough to ensure that justice would be served and the waiver was voluntary and knowingly. Considering all the factors, there is a reasonable probability that a Faretta claim would have succeeded on direct appeal. For that reason, Petitioner's appellate counsel's failure to raise this issue on appeal prejudiced Petitioner and thus can support a meritorious ineffective-assistance claim.

**Ground Two:** Appellate counsel provided ineffective assistance of counsel for the failure to appeal the insufficiency of the evidence for all counts due to the leading inquiries by the Government on direct.

**Supporting Facts:** Petitioner proceeded to trial as his own counsel; even though, he was facing a ten-count Second Superseding Indictment. Since Petitioner was handling his trial pro se, the Government took advantage of the situation by asking leading

questions to almost all of its witnesses on direct examination.  But by asking leading

questions to all of its witnesses for all counts of the Second Superseding Indictment, the

Government failed to abduce evidence showing that Petitioner violated any federal

statute.  A leading question is a question asked of a witness that already <u>suggests</u> the

witness' answer.  A leading question is asked by a lawyer to clue the witness to the

<u>intended answer</u> he/she is seeking from the witness.  In general, leading questions are not

allowed during the direct examination of a witness, however, they are allowed on the

cross-examination of a witness.  Rule 611 (c) of the Federal Rules of Evidence, lists the

situations in which leading questions are appropriate, which include on cross-

examination, when dealing with preliminary matters, when there is difficulty eliciting

testimony from a witness, and when a hostile or adverse witness is being questioned.

The Government began its barrack of leading questions with its first witness, case
agent Bruce Little by asking the following leading questions:

AUSA: And when you searched the confidential informant, did he have any extra
currency?

LITTLE: No.

AUSA:  Did he have any other contraband or drugs on him?

LITTLE:  No.

**DKT # 798 (8-19-2019); T. Tr. Vol. I, page 18**.

AUSA: Does being at work prevent someone from selling drugs later?

LITTLE: No.

**DKT # 798; T. Tr. Vol. I, page 30.**

AUSA:  Now, in making these controlled purchases, when you allow the
informant to leave, do you conduct surveillance?

LITTLE:  Yes.

**DKT # 798; T. Tr. Vol. I, page 32.**

AUSA:  So if Mr. Phyfier was out driving a truck on weekdays as he proclaimed, then clearly he couldn't be driving a truck on the weekdays if he's selling his drugs at his house at the same time, could he?

LITTLE: No, sir, he could not.

**DKT # 796, T. Tr. Vol. II, page 8.**

For its next witness, cooperating co-defendant Ernest Rhodes, the Government continued with its leading questions:

AUSA:  In being here today, are you here on your own volition here?

RHODES:  Yes, ma'am.

AUSA:  Okay.  Did the government promise you anything in return for your testimony?

RHODES:  No, ma'am.

AUSA:  Okay.  Has the government told you to tell the truth?

RHODES:  Yes, ma'am.

**DKT # 796. T. Tr. Vol II, page 123.**

AUSA:  So can you estimate for me, if possible, over the course of your dealing with him, how much crack cocaine did you get through trade or from buying with money from Mr. Phyfief?

RHODES:  Well, I got a lot of crack cocaine.

AUSA:  Okay. My math isn't that good that quickly, but about 2 ounces a week just about every week for 10 years?

RHODES:  Yes, ma'am.

**DKT # 796. T. Tr. Vol. II, page 130.**

For Lt, Joseph Dunn of the Montgomery Police Department, the Government led him with leading questions:

AUSA:  You mentioned he was a known felon.  What's the issue with having a gun and being a known felon?
DUNN:  When you're a convicted felon, you're not supposed to be in the possession of a firearm.

For Edgar Coleston, cooperating co-defendant was led to testify as follows:

AUSA:  And did the government promise you anything in exchange for your testimony today?
COLESTON:  No, ma'am.
AUSA: Has the government told you to do anything in particular?

COLESTON: No, ma'am.

AUSA: Has the government told you to tell the truth?

COLESTON: Yes, ma'am.

AUSA: The fact that you heard Phyfier say I'm going to drop some, does that indicate he is cooking crack cocaine? Because I used to sell it personally. Q. So you know what it looks like? A. Yes, ma'am.

COLESTON: Yes, ma'am.

AUSA: And have you ever seen cooked crack cocaine before?

COLESTON: Yes, ma'am. Because I used to sell it personally.

AUSA: So you know what it looks like?

COLESTON: Yes, ma'am.

AUSA: Have you ever seen crack cocaine that's been cooked by Mr. Phyfier?

COLESTON: Yes, ma'am.

## Dkt # 797. T. Tr. Vol. III, pages 30-31.

For George Jones, cooperating co-defendant:

AUSA: Now, based on the conversations you had with Mr. Phyfier, was he getting this cocaine for himself? A. Yes, sir. But -- Q. And was he going to use it himself or was he going to do something else with it? A. He was going to sell it.

JONES: Yes, sir. But --

AUSA: And was he going to use it himself or was he going to do something else with it?

JONES: He was going to sell it.

## DKT # 797. T. Tr. Vol, page 56.

The Government, in the instant matter was not the one who was supposed to be testifying. The Government was not the one who took the oath and promised to tell "the truth, the whole truth, and nothing but the truth." The jurors needed to evaluate the testimony, demeanor, and character of the person who witnessed the events. That person was supposed to the "witness." But by leading through every important detail, the jurors never heard from the real witnesses. The only testimony the jurors can really evaluate are those double words "Yes sir" and "No sir" responses. The direct examination of witnesses is the most important part of the trial. Cross-examination may be more exciting and closing argument more eloquent, but it is the direct examination of your own witnesses that will determine whether the jurors hear, understand, and remember the facts upon which your case is based. In the instant matter, the Government violated Rule 611

21

of the Federal Rules of Evidence by leading almost of its witnesses on direct

examination.  In pertinent parts, Rule 611 provides:

> **(c) Leading Questions.** Leading questions should not be used on direct
> examination except as necessary to develop the witness's testimony. Ordinarily, the court
> should allow leading questions:
> > **(1)** on cross-examination; and
> > **(2)** when a party calls a hostile witness, an adverse party, or a witness
> > identified with an adverse party.

**Rule 611 (c), Fed. R. of Evid.**

In the Court's final instructions to the jury, the Court in all federal cases reminds

jurors what is not evidence.  And, what is not evidence is what the attorneys are going to

say in their opening statements or in their closing arguments or *at any time*.  Whatever

the attorneys say is not evidence.  So, keep that -when you are making notes, make sure

you keep that in mind.  That's not evidence, what the attorneys say.  They were not

present at the scene of the events you're going to hear about.  They were not there, and

they are certainly not testifying under oath.  So, they are not witnesses, and they cannot

be considered -- and what they say cannot be considered -- as evidence.

To prevail on a claim of ineffective assistance, a defendant must show that (1)

"counsel's performance was deficient," meaning it "fell below an objective standard of

reasonableness"; and (2) "the deficient performance prejudiced the defense." Strickland

v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984).  A defendant may

satisfy the prejudice prong by showing a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the

outcome."  Id. at 694, 104 S. Ct. at 2068.  "The likelihood of a different result must be

substantial, not just conceivable." Harrington v. Richter, 562 U.S. ___, ___, 131 S. Ct.

770, 792 (2011).  Appellate counsel's performance is prejudicial if a "neglected claim would have a reasonable probability of success on appeal."  Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).

If Appellate counsel had perused the trial transcripts, he would have seen the many instances of the Government engaging in leading its witnesses, and which should have led him to file this issue on direct appeal.  Petitioner was prejudiced by appellate counsel's deficient performance; because he was convicted on a 10-count Second Superseding Indictment after a jury trials in which little or no evidence about the alleged crimes came from the testifying witnesses.  Using only what the witnesses said during their testimony, and the evidence coming from the witnesses was many "Yes sir" and No sir", which is insufficient evident for convictions on any of the counts.  Petitioner respectfully requests that his convictions on Counts One thru 10 be vacated for the reasons stated in this argument.

**Ground Three**: On direct appeal, appellate counsel provided ineffective assistance of counsel for not challenging the relevant conduct attributed to Petitioner at sentencing.

**Supporting Facts**: Count One of the Second Superseding Indictment charged conspiracy to distribute500 grams but less than 5 kilograms or more of cocaine, 280 grams or more of crack cocaine, and a quantity of marijuana; and, Petitioner was convicted on Count One as charged.  At sentencing and proceeding pro se, Petitioner objected to the quantity of cocaine attributed to him by Government's witness, Ernest Rhodes.  **Sentencing transcript at page 9; see also DKT # 790.**  In his objection to the quantity of crack cocaine attributed to him by Rhodes, Petitioner stated that he did not sale Rhodes two ounces of crack a month for ten years; but, instead, Petitioner

remembered only one occasion that he sold crack to Rhodes.  **Id**.  The Court did not grant

or overrule the objection to the quantity of crack attributed to Petitioner by Rhodes, but

instead, the Court instructed the Probation Officer to add to the Presentence Investigation

Report that Petitioner denied the statements made by Rhodes at trial.  **S. Tr. Vol II, page**

**10; DKT #790.**  During day two of the trial and on direct examination and being led by

the Government, Rhodes testified as follow:

> AUSA:  Okay.  And so if you could estimate, about how much crack cocaine,
> whether for trade or for money, would you get from Mr. Phyfier a week?  In those (sic)
> two to four times, you said you would buy from him, about how much crack cocaine?
> LTTLE:  I'd get like probably an ounce and a half or 2 ounces.
> AUSA:  And again, you said that was every week for about 10 years?
> LITTLE:  Yes, ma'am.

**T. Tr. Vol. II, page 129**.

From these estimates and "probable quantities", 29,540.5 grams of crack cocaine[2]

was attributed to Petitioner from Rhodes alone.  Rhodes supposedly began purchasing

crack cocaine from Petitioner in 2008 and the relationship continued until 2018.

Petitioner was arrested on or about October 2017 and remained in continued custody

since his arrest; therefore, one year cannot be counted.  Next, more crack cocaine was

attributed to Petitioner by Rhodes than Petitioner obtained from his two suppliers, George

Edward Jones, III and Darnez Jones.  Even though, George and Darnez were suppliers of

cocaine and crack cocaine to Petitioner, 4.5 ounces of cocaine was attributed to Petitioner

as coming from George Jones; and, Darnez Jones attributed 186 grams of cocaine to

Petitioner.

USSG Section 6A1.3 provides a framework for the sentencing hearing to include

(a) when any factor important to the sentencing determination is reasonably in dispute,

the parties shall be given an adequate opportunity to present information to the court regarding that factor.  In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy; and, (b) the court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32 (i), Fed. R. Crim. P.

Under Rule 32 (i) (3) (B), when a defendant disputes a portion of the presentence report ("PSR"), the court must either "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  In either case, the court "must append a copy of the court's determinations under th[e] rule to any copy of the presentence report made available to the Bureau of Prisons [BOP]."  Fed. R. Crim. P. 32(i)(3)(C).  "[F]or any such controverted factual matter the district court should state on the record how it has treated the matter."  United States v. Hill, 766 F.2d 856, 858 (4th Cir. 1985); see also United States v. Lopez, 907 F.2d 1096, 1101 (11th Cir. 1990) ("When a court declines to resolve a factual challenge to a [PSR], it must expressly set out in writing the disputed facts that it did not resolve.").  "Strict adherence to the dictates of [the rule] is essential because the rule helps ensure that future decisions about a defendant's penal treatment are based on a fair and accurate [PSR]".  Id.; see also United States v. Murchison, 865 F.3d 23, 27 (1st Cir. 2017) ("[T]ogether, Rule 32 and the BOP's system work to ensure that the BOP classifies and processes sentenced offenders with the benefit of all relevant and informative sentencing material.").

---

[2] 29,540.5 grams of crack cocaine was derived from 1,040 ounces of crack cocaine over a ten-year period

The District Court did not resolve the dispute on the quantity of crack that should be attributed to Petitioner from cooperating witness Ernest Rhodes. Goggans provided ineffective assistance of counsel on appeal for not appealing the issue.

**Ground Four:** Appellant Counsel provided ineffective assistance of counsel for not appealing the illegal sentence for Count Seven of the Second Superseding Indictment.

**Supporting Facts:** Count Seven of the Second Superseding Indictment charged Petitioner with distribution of a quantity of marijuana, in violation of 21 U.S.C. Section 841 (a) (1) and (b) (1) (D). Section 841 (b) (1) (D) has a statutory maximum sentence of five (5) years, and with a properly filed Section 851 Information, the statutory maximum sentence is 10 years or 120 months. In the instant matter, Petitioner was sentenced to a concurrent 300-month/25 years sentence for Count Seven; therefore, the Court sentenced Petitioner above his statutory maximum of 10 years.

Goggans provided ineffective assistance of counsel for not appealing the incorrect sentence for Count Seven.

## CONCLUSION

Petitioner respectfully requests that his convictions on Counts 1 thru 10 be vacated and a new trial be ordered.

Date: 7-16-21

Cyrus Phyfier # 17322-002
FCI Talladega/PO Box 1000
Talladega, AL 35160

---

starting in 2008.

26

Cyrus Phyfier
17322-002
FCI Talladega
PMB 1000
Talladega, Al. 35160

JUL 15 2021

7/17

**$0.00**

JUL 15 2021

EXPECTED DELIVERY DAY: 07/19/21

USPS TRACKING® #

9505 5104 0842 1196 1639 21

Legal Mail

Office of the Clerk
United States District Court
Middle District of Alabama
1 Church Street, Suite B-110
Montgomery, Al. 36104-4018