UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

RECEIVED

2021 DEC 21   A 10: 29

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CYRUS PHYFIER,
    Petitioner,

vs.                              CIVIL ACTION NO.: 2:21-cv-480

                                 CRIMINAL NO.: 2:17-cr-482-MHT-SMD-3

UNITED STATES OF AMERICA,
    Respondent.

## REPLY IN OPPOSITION TO THE RESPONSE TO SECTION 2255 MOTION

**COMES NOW**, the Petitioner, Cyrus Phyfier, and **REQUESTS** this Honorable

Court to consider this Reply in Opposition to the Government's Response to motion to

vacate his convictions and sentences; and, grant the relief requested in the initial action

pursuant to 28 U.S.C. Section 2255(f) (1) and in this instant Reply.  In his initial motion

filed on or about July 19, 2021, CECF #[1] 1, Petitioner alleged four ineffective assistance

of appellate counsel claims for relief – 1) Appellate counsel provided ineffective

assistance of counsel for the failure to raises a Faretta claim on direct appeal?; 2)

Appellate counsel provided ineffective assistance of counsel for the failure to appeal the

insufficiency of the evidence for all counts due to the leading inquiries by the

Government on direct; 3) on direct appeal, appellate counsel provided ineffective

assistance of counsel for not challenging the relevant conduct attributed to Petitioner at

---

[1] CECF # is Civil docket entry number for 2:21-cv-00480-MHT-SMD.

1

sentencing; and, 4) appellate counsel provided ineffective assistance of counsel for not appealing the illegal sentence for Count Seven of the Second Superseding Indictment.

Petitioner is abandoning issue Four, appellate counsel provided ineffective assistance of counsel for not appealing the illegal sentence for Count Seven of the Second Superseding Indictment. Petitioner's Criminal Judgment shows that he received a sentence of 120-month for Count Seven, which means that there was no violation. According to the docket sheet for case number 2:17-cr-482-3 at entry number 763, Petitioner received a sentence of 300-month on Count Seven.

On appeal, Petitioner was represented by Thomas M. Goggans, who prepared and filed the brief for Petitioner. On appeal, Goggans advanced the following issues: 1) whether the district court's prohibition of Appellant's attempt at a defense to the 18 U.S.C. Section 922 (g) charge by way of evidence of a state pardon and issuance of a pistol license was error; 2) whether the government failed to show that the warrantless search of Appellant Phyfier's friend's apartment was part of a valid protective search or with proper consent; 3) whether the presentation of other acts evidence at trial constituted plain error.

After being instructed to respond to the Section 2255 motion on July 22, 2021, the Government, after receiving two extensions of time, filed a Response in opposition to the Section 2255 motion (henceforth the Response) on November 5, 2021. **CECF # 10**. Petitioner was Ordered to file a reply to the response filed by the Government on November 9, 2021 and given until November 29, 2021 to file the reply. **CECF # 11**. Petitioner requested an extension of time; because, he did not receive the Order until on

or about November 19, 2021 due to shortage of staff to sort the mail at the institution, among other reasons.

## STATEMENT OF THE CASE

Petitioner was indicted on ten counts of a ten-count Second Superseding Indictment filed on July 17, 2019. **ECF #[2] 582**.  Count One charged conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, 280 grams or more of cocaine base, and a quantity of marijuana, in violation of 21 U.S.C. Sections 846, 841 (a) (1) and (b) (1) (A), (B), and (C); Counts Two thru Six charged distribution of a quantity of cocaine base in violation of 21 U.S.C. Sections 841 (a) (1) and (b) (1) (C); Count Seven charged distribution of marijuana, in violation of 21 U.S.C. Section 841 (a) (1) and (b) (1) (C); Counts Eight and Ten charged felon in possession of a firearm, in violation of 18 U.S.C. Sections 922 (g) (1) and 924 (a) (2); and, Count Nine charged possession of a firearm in furtherance of a drug -trafficking offense, in violation of 18 U.S.C. Section 924 (c) (1). **Id**.

Before the trial began, Petitioner stated his desire to have another lawyer to represent him; since, he and his court-appointed counsel, David W. Vickers, were having conflict.  After a hearing was held on August 19, 2019, and the Court refused to appoint another counsel for Petitioner.  Petitioner did not want to go to trial with Vickers, but he knew he could not handle a trial on his own; so, he wanted to assist Vickers in handling the case and trial.  But the Court decided it was either Vickers would handle the trial or Petitioner could represent himself.  Petitioner decided to go without Vickers.  On August 20, 2019, the District Court issued an Order finding that Petitioner having knowingly and

---

[2] ECF # is the criminal docket number for 2:17-cr-480-3.

voluntarily waived his right to counsel on the record on August 19, 2019, was permitted to represent himself, effective August 19, 2019, and Attorney David Windell Vickers was appointed as standby counsel. **ECF # 620**. After a four-day jury trial that concluded on August 23, 2019, Petitioner was found guilty on all ten counts in which he was charged. **ECF # 629**. At sentencing on December 5, 2019, Petitioner again represented himself with Vickers as standby counsel. **ECF # 758**. Petitioner was sentenced to concurrent 300-month sentences on Counts 1-6, a 120-month on Counts 7, 8 and 10 to be served concurrently to Counts 1 – 6, and a 60-month sentence on Count 9 to be served consecutive to the sentences on all other counts. **ECF # 763/790**. Petitioner was also sentenced to terms of supervised release of 10 years on Count One, 6 years on Counts Two thru Six; 4 years on Count Seven, 5 years on Counts Eight and Ten, and 5 years on Count Nine, with all terms imposed to be served concurrently. **Id**.

Petitioner's direct appeal to the Eleventh Circuit was affirmed on January 5, 2021 by an unpublished per curiam opinion. **See United States v Phyfier, No. 19-14944 (11th Cir. Jan. 5, 2021)**.

## NONE OF PETITIONER'S CLAIMS ARE BARRED

The Response has opposed the Section 2255 motion for a variety of reasons. First, the Response asserted that the claims are procedurally barred as they were not previously raised at trial or on direct appeal, and, Section 2255 motion cannot be used to review these claims. **CECF # 10 at pages 6-7**. Citing Eleventh Circuit law, Brown v United States, 720 F.3d 1316, 1334 (11th Cir. 2013), the Response stated: "To obtain collateral relief on errors that were not raised on direct appeal, [a petitioner] must show both (1) cause excusing his ... procedural default, and (2) actual prejudice resulting from

4

the errors of which he complains." <u>Id</u> at **7**.

Then, the Response stated that if Petitioner cannot show cause and prejudice, he must be able to demonstrate that he is actual innocent under <u>Bousley v United States</u>, 523 U.S. 614, 620-23 (1998). **CECF # 10 at 7**.

If the <u>Frady's</u> "cause and prejudice" standard does govern consideration of defendant's claims, defendant can show "cause" for several reasons. First, counsel's failure to raise the four issues on appeal constituted ineffective assistance of counsel. Ineffective assistance of counsel provides cause for a procedural default. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 487 (1986); <u>Smith v. Murray</u>, 477 U.S. 527, 535 (1986).

Ineffective assistance has been rendered when 1) counsel's representation fell below an objective standard of reasonableness; and 2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984); <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986). Counsel's performance is deficient if it does not rise to the level of reasonably effective assistance. <u>Strickland</u>, 466 U.S. at 687. A court measures the reasonableness of counsel's performance against prevailing professional norms. <u>United States v. Barbour</u>, 813 F.2d 1232, 1234 (D.C. Cir. 1987). Counsel has a duty to act "on behalf of his client's best interests." <u>Id</u>.

In the instant matter, despite the fact the district court failed to hold a <u>Faretta</u> hearing to determine whether Petitioner had voluntarily and knowingly waived his right to proceed to trial without counsel, appellant counsel did not raise the issue on appeal. Even though, the Government testified for its witnesses with its leading questions that required only YES and NO responses, appellant counsel did not appeal the insufficiency

of evidence; since, none of the witness presented any evidence.  Also, Appellate counsel

failed to raise on appeal that a matter in dispute that had a major impact on sentencing,

quantity of crack cocaine attributable to Appellant, was not resolve by the District Court,

which was a violation of Rule 32 (i) of the Federal Rules of Criminal Procedure.

The first two issues are attacks on the convictions on all counts; and, the last issue

is a challenge against the sentences Appellant received on the drug counts.  The failure to

raise these issues attacking the convictions were especially egregious on appeal; because,

both issues were "slam-bang winners"; since, both issues had support in fact and law as

will be shown below under Arguments I and II.  The challenges against the drug

sentences were clearly in violations of Rule 32 (i); since, a disputed matter was not

resolved.

"When a defendant alleges his appellate counsel rendered ineffective assistance

by failing to raise an issue on appeal, courts examine the merits of the omitted issue[s]."

United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).  "The Sixth Amendment does

not require an attorney raise every nonfrivolous issue." Id. at 394.  Rather, counsel's

performance is ineffective when a "dead-bang" winner is omitted on appeal. Id. at 395.

In reviewing a claim of ineffective assistance of appellate counsel under

Strickland, a court must look to the merits of the issue(s) that appellate counsel failed to

raise.  See Malicoat v. Mullin, 426 F.3d 1241, 1249 (10th Cir. 2005) ("[I]n certain

circumstances, appellate counsel's omission of an issue may constitute ineffective

assistance under Strickland.  In analyzing such claims, the court must consider the merits

of the omitted issue." (citing Smith v. Robbins, 528 U.S. 259, 289 (2000)); Cargle v.

Mullin, 317 F.3d 1196, 1205 (10th Cir. 2003) ("The very focus of a Strickland inquiry

regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."). In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, i.e., whether there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (e.g., a reversal, new trial, new sentencing proceeding, or sentence modification).

The district court failed to give Petitioner adequate warnings about the dangers and disadvantages of self-representation, as required by Faretta v. California, 422 U.S. 806 (1975). A defendant in a criminal trial has a Sixth Amendment right to represent himself, but only when he knowingly and intelligently chooses to do so. United States v. Joseph, 333 F.3d 587, 589-90 (5th Cir.2003) (citing Faretta, 422 U.S. at 833-35, 95 S.Ct. 2525). Such constitutional challenges are reviewed de novo. Joseph, Id. at 589. " A defendant who wishes to waive the right to counsel should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open." Id. at 590.

In determining whether a defendant has effectively waived the right to counsel, the district court must consider various factors, including the defendant's age, education, background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practicality of

waiving the right to counsel.  Id.  See United States v. Davis, 269 F.3d 514, 519 (5th Cir.2001), citing Bench Book 1.02 (4th ed.2000).

Petitioner has met his burden of showing not merely that the failure to appeal the lack of a Faretta hearing and insufficiency of the evidence, created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.  A proper Faretta hearing would have shown that the decision for self-representation was not made knowingly and voluntarily; and, a challenge to the sufficiency of the evidence due to the Government's misconduct of leading its witnesses on direct examination were dead-bang winners and were as strong or stronger than the issues raised by appellate counsel.

Petitioner has also shown that appellate counsel should have raised the at least one sentencing issue; since, the failure to resolve a disputed matter at sentencing was a clear violation of Rule 32 (i) (3) (B).  A dispute on a sentencing issue that had a direct effect on the advisory guideline range (base offense level) was not resolved.  Therefore, this issue was dead-bang winner also.

## ARGUMENTS

### I.

**Ground One:** Appellate counsel provided ineffective assistance of counsel for the failure to raise a Faretta claim on direct appeal.

**Supporting Facts:** In his initial filing, Petitioner alleged that appellant counsel, Thomas Martele Goggans, provided ineffective assistance of counsel on appeal for his failure to raise a Faretta claim on direct appeal.  **CECF # 1-1 at 15.**  Petitioner asserted that the Sixth Amendment includes an implicit right to self-representation, and a

8

defendant cannot be compelled to accept the assistance of counsel. Faretta v. California, 422 U.S. 806, 819 (1975).  To invoke the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel. Id. at 835.  "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a . . . hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." United States v. Stanley, 739 F.3d 633, 645 (11th Cir. 2014).  This so-called Faretta hearing should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835, 95 S. Ct. at 2541.  But the Faretta hearing is merely "a means to the end" of ensuring that a defendant's waiver is knowing and voluntary.  Stanley, 739 F.3d at 645.

Petitioner did not knowingly and voluntarily waive his right to the assistance of counsel; he knowingly and voluntarily waived his right not to be represented by David Vickers. **See Affidavit of Petitioner -- Petitioner's Exhibit I**.  The purpose of the hearing was to determine whether Vickers would be replaced with new counsel.  After a hearing was held on August 19, 2019, and the Court refused to appoint new counsel for Petitioner; since, two different attorneys had been appointed already with one of them being Vickers.  Petitioner did not want to go to trial with Vickers, but he knew he could not handle a trial on his own; so, he wanted to assist Vickers in handling the case and trial, or he wanted Vickers removed.  But the Court decided it was either Vickers would handle the trial or Petitioner could represent himself.  Petitioner decided to go without Vickers. Id.  On August 20, 2019, the District Court issued an Order finding that Petitioner having knowingly and voluntarily waived his right to counsel on the record on

August 19, 2019, was permitted to represent himself, effective August 19, 2019, and that

Attorney David Windell Vickers was appointed as standby counsel. **DKT # 620**.

The Response opposed the <u>Faretta</u> claim by finding, that, even though, Petitioner

clearly stated his intention of self-representation before the start of his trial, an *In Camera*

*Hearing* was held on August 19, 2019. **CECF # 10 at 10**. The Response went on to

assert that the District Court asked Petitioner a series of questions which should have

satisfied the <u>Faretta</u> standard. **Id. at 11**.

Petitioner *opposes* the Response; because, the *In Camera Hearing* did not replace

the need to hold a <u>Faretta</u> hearing. This Circuit considers eight factors when determining

whether a waiver of the right to counsel was knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health;
> (2) the extent of the defendant's contact with lawyers prior to trial; (
> 3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties;
> (4) the defendant's understanding of rules of procedure, evidence and courtroom decorum;
> (5) the defendant's experience in criminal trials;
> (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant;
> (7) mistreatment or coercion of the defendant; and
> (8) whether the defendant was trying to manipulate the events of the trial.

Id. at 645–46 (citing <u>Fitzpatrick v. Wainwright</u>, 800 F.2d 1057, 1065–67 (11th Cir.

1986)). Though a defendant's waiver must be knowing and voluntary at the time he

makes it, we may "look to subsequent events" to find "evidence of what would have been

true when a defendant first waived his rights." <u>Id.</u> at 646; see also <u>Jones v. Walker</u>, 540

F.3d 1277, 1295 (11th Cir. 2008) (en banc) ("We review Jones' performance during trial,

not because we wish to determine whether his trial conduct was good or bad, but because

his performance at trial provides some circumstantial evidence of what he knew at the

time he waived his right to counsel."). See, e.g., United States v. Evans, 478 F.3d 1332, 1339–40 (11th Cir. 2007); Nelson v. Alabama, 292 F.3d 1291, 1297–1301 (11th Cir. 2002).

Examining the record with the eight Fitzpatrick factors in mind, and nearly every factor point in one direction: Petitioner did not knowingly and voluntarily waive his right to counsel. Petitioner knowingly and voluntarily waive his right to the counsel of David W. Vickers; but Petitioner wanted and needed representation by counsel. For that reason, his appellate counsel's failure to raise a Faretta argument on appeal meets Strickland's prejudice prong. First, Petitioner was fifty-one years old at the time of his trial, had obtained a GED and had no history of mental- or physical-health issues. Second, Petitioner's contact with counsel prior to his decision to proceed pro se was very rocky and intense. **Exhibit I**. Third, as demonstrated by his comments and performance at trial, it is clear that Petitioner did not have a "clue" about the law, the nature of the offenses, or the penalties he faced. Fourth, Petitioner's lack of understanding of rules of procedure, evidence and courtroom decorum was evident throughout the trial with Petitioner being instructed several times about the proper procedures, and his lack of knowledge to object to inappropriate and illegal conduct by the Government during its presentation of evidence. See Stanley, 739 F.3d at 646 ("[W]e consider how ably a pro se defendant performed in presenting his case as evidence of his understanding of rules of procedure, evidence, and courtroom decorum.").

Fifth, even though, Petitioner had criminal history, he had never handled a jury trial and had only been involved in only one trial and, he had the assistance of counsel. Therefore, Petitioner's understanding of a criminal trial was limited to his review of

Judge Judy and old Perry Mason clips.  Greene v. United States, 880 F.2d 1299, 1304

(11th Cir. 1989) (remarking that a defendant's "substantial experience with the criminal

justice system" is "a factor which weighs in favor of a finding of effective waiver").

Sixth, standby counsel was appointed, but stand-by counsel did almost nothing to assist

Petitioner from being abuse by the Government in its presentation of evidence.  Seventh

and eighth, the record contains no evidence either that Petitioner was mistreated or

coerced into waiving his right to counsel or that he waived counsel in an effort to

manipulate the proceedings.  Telling Petitioner that it would be a bad idea for him to

represent himself was not enough to ensure that justice would be served or that the

waiver was voluntary and knowingly.  Considering all the factors, there is a reasonable

probability that a Faretta claim would have succeeded on direct appeal.  For that reason,

Petitioner's appellate counsel's failure to raise this issue on appeal prejudiced Petitioner

and thus can support a meritorious ineffective-assistance claim.

## II.

**Ground Two:** Appellate counsel provided ineffective assistance of counsel for

the failure to appeal the insufficiency of the evidence for all counts due to the leading

inquiries by the Government on direct.

**Supporting Facts:** Petitioner proceeded to trial as his own counsel; even though,

he was facing a ten-count Second Superseding Indictment.  Since Petitioner was handling

his trial pro se, the Government took advantage of the situation by asking leading

questions to almost all of its witnesses on direct examination.  But by asking leading

questions to all of its witnesses for all counts of the Second Superseding Indictment, the

Government failed to abduce evidence showing that Petitioner violated any federal

12

statute.  A leading question is a question asked of a witness that already <u>suggests</u> the

witness' answer.  A leading question is asked by a lawyer to clue the witness to the

<u>intended answer</u> he/she is seeking from the witness.

In general, leading questions are not allowed during the direct examination of a

witness, however, they are allowed on the cross-examination of a witness.  Rule 611 (c)

of the Federal Rules of Evidence, lists the situations in which leading questions are

appropriate, which include on cross-examination, when dealing with preliminary matters,

when there is difficulty eliciting testimony from a witness, and when a hostile or adverse

witness is being questioned.

In his initial motion, Petitioner stated that the Government began its barrack of

leading questions with its first witness, case agent Bruce Little by asking the following

leading questions:

> AUSA: And when you searched the confidential informant, did he have any extra currency?
>
> LITTLE: No.
>
> AUSA:  Did he have any other contraband or drugs on him?
>
> LITTLE:  No.

**DKT # 798 (8-19-2019); T. Tr. Vol. I, page 18.**

> AUSA: Does being at work prevent someone from selling drugs later?
>
> LITTLE: No.

**DKT # 798; T. Tr. Vol. I, page 30.**

> AUSA:  Now, in making these controlled purchases, when you allow the informant to leave, do you conduct surveillance?
>
> LITTLE:  Yes.

**DKT # 798; T. Tr. Vol. I, page 32.**

AUSA:  So, if Mr. Phyfier was out driving a truck on weekdays as he proclaimed, then clearly, he couldn't be driving a truck on the weekdays if he's selling his drugs at his house at the same time, could he?

LITTLE: No, sir, he could not.

**DKT # 796, T. Tr. Vol. II, page 8.**

For its next witness, cooperating co-defendant Ernest Rhodes, the Government continued

with its leading questions:

AUSA:  In being here today, are you here on your own volition here?

RHODES:  Yes, ma'am.

AUSA:  Okay.  Did the government promise you anything in return for your testimony?

RHODES:  No, ma'am.

AUSA:  Okay.  Has the government told you to tell the truth?

RHODES:  Yes, ma'am.

**DKT # 796. T. Tr. Vol II, page 123.**

AUSA:  So can you estimate for me, if possible, over the course of your dealing with him, how much crack cocaine did you get through trade or from buying with money from Mr. Phyfief?

RHODES:  Well, I got a lot of crack cocaine.

AUSA:  Okay.  My math isn't that good that quickly, but about 2 ounces a week just about every week for 10 years?

RHODES:  Yes, ma'am.

**DKT # 796. T. Tr. Vol. II, page 130.**

For Lt, Joseph Dunn of the Montgomery Police Department, the Government led him

with leading questions that included:

AUSA:  You mentioned he was a known felon.  What's the issue with having a gun and being a known felon?

DUNN:  When you're a convicted felon, you're not supposed to be in the possession of a firearm.

For Edgar Coleston, another cooperating co-defendant, he was led to testify as

follows:

> AUSA:  And did the government promise you anything in exchange for your testimony today?
> COLESTON:  No, ma'am.
> AUSA: Has the government told you to do anything in particular?
> COLESTON: No, ma'am.
> AUSA: Has the government told you to tell the truth?
> COLESTON:  Yes, ma'am.
> AUSA: The fact that you heard Phyfier say I'm going to drop some, does that indicate he is cooking crack cocaine? Because I used to sell it personally. Q. So you know what it looks like? A. Yes, ma'am.
> COLESTON: Yes, ma'am.
> AUSA:  And have you ever seen cooked crack cocaine before?
> COLESTON:  Yes, ma'am.  Because I used to sell it personally.
> AUSA: So you know what it looks like?
> COLESTON:  Yes, ma'am.
> AUSA:  Have you ever seen crack cocaine that's been cooked by Mr. Phyfier?
> COLESTON:  Yes, ma'am.

**Dkt # 797. T. Tr. Vol. III, pages 30-31.**

For George Jones, another cooperating co-defendant, testified as followed on

direct:

> AUSA:  Now, based on the conversations you had with Mr. Phyfier, was he getting this cocaine for himself? A. Yes, sir.  But -- Q. And was he going to use it himself or was he going to do something else with it?  A. He was going to sell it.
> JONES: Yes, sir.  But --
> AUSA:  And was he going to use it himself or was he going to do something else with it?
> JONES:  He was going to sell it.

**DKT # 797. T. Tr. Vol, page 56.**

The Government, in the instant matter, was not the one who was supposed to be

testifying.  The Government was not the one who took the oath and promised to tell "the

truth, the whole truth, and nothing but the truth." The jurors needed to evaluate the

testimony, demeanor, and character of the person who witnessed the events.  That person

was supposed to the "witness."  But by leading through every important detail, the jurors

never heard from the real witnesses. The only testimony the jurors can really evaluate are those double words "Yes sir" and "No sir" responses. The direct examination of witnesses is the most important part of the trial. Cross-examination may be more exciting and closing argument more eloquent, but it is the direct examination of your own witnesses that will determine whether the jurors hear, understand, and remember the facts upon which a case is based. In the instant matter, the Government violated Rule 611 of the Federal Rules of Evidence by leading almost of its witnesses on direct examination.

In opposing the sufficiency of the evidence due to the continued use of leading questions by the Government, the Response, first, attempted to show that the claim was procedurally defaulted because it was not raised on direct appeal. **CECF # 10 at 13.** Then, the Government asserted that Petitioner has presented no evidence that the Court abused its discretion in allowing any such line of questioning to proceed to the extent any leading questions were asked. **Id. at 13-14.**

Petitioner *opposes* the Response for several reasons. First, Petitioner has shown above that this issue has not been procedurally defaulted; since, it is an ineffective assistance of counsel claim which should be raised in a post-conviction motion pursuant to Section 2255. Without objections by a pro se Petitioner, the Court allowed the leading questions to be asked and answered. But, it was the Government who knowingly led its witnesses with impunity knowing full well that the violations would not be objected to by pro se Petitioner, and standby counsel was just that – standby.

In pertinent parts, Rule 611 provides:

**(c) Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
    **(1)** on cross-examination; and

16

**(2)** when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

**Rule 611 (c), Fed. R. of Evid.**

In the Court's final instructions to the jury, the Court in all federal cases reminds jurors what is not evidence. And, what is not evidence is what the attorneys are going to say in their opening statements or in their closing arguments or *at any time*. Whatever the attorneys say is not evidence. So, keep that -when you are making notes, make sure you keep that in mind. That's not evidence, what the attorneys say. They were not present at the scene of the events you're going to hear about. They were not there, and they are certainly not testifying under oath. So, they are not witnesses, and they cannot be considered -- and what they say cannot be considered -- as evidence.

To prevail on a claim of ineffective assistance, a defendant must show that (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). A defendant may satisfy the prejudice prong by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011). Appellate counsel's performance is prejudicial if a "neglected claim would have a reasonable probability of success on appeal." Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).

17

If Appellate counsel had perused the trial transcripts, he would have seen the many instances of the Government engaging in leading its witnesses, and which should have led him to file this issue on direct appeal. Petitioner was prejudiced by appellate counsel's deficient performance; because he was convicted on a 10-count Second Superseding Indictment after a jury trial in which little or no evidence about the alleged crimes came from the testifying witnesses. Using only what the witnesses said during their testimony, and the evidence coming from the witnesses was many "Yes sir" and No sir", which is insufficient evident for convictions on any of the counts. Petitioner respectfully requests that his convictions on Counts One thru 10 be vacated for the reasons stated in this argument.

## III.

**Ground Three**: On direct appeal, appellate counsel provided ineffective assistance of counsel for not challenging the relevant conduct attributed to Petitioner at sentencing.

**Supporting Facts**: In his initial motion, Petitioner alleged that appellate counsel provided ineffective assistance of counsel on appeal for not challenging the relevant conduct attributed to Petitioner; since, an objection to relevant conduct was not resolved by the District Court. Count One of the Second Superseding Indictment charged conspiracy to distribute at least 500 grams but less than 5 kilograms of cocaine, 280 grams or more of crack cocaine, and a quantity of marijuana. Petitioner was convicted on Count One as charged. At sentencing and proceeding pro se, Petitioner objected to the quantity of cocaine attributed to him by Government's witness, Ernest Rhodes. **Sentencing transcript at page 9; see also ECF # 790.** In his objection to the quantity of

18

crack cocaine attributed to him by Rhodes, Petitioner stated that he did not sale Rhodes two ounces of crack a week for ten years; but, instead, Petitioner remembered only one occasion that he sold crack to Rhodes. **Id**. The Court did not grant or overrule the objection to the quantity of crack attributed to Petitioner by Rhodes, but instead, the Court instructed the Probation Officer to add to the Presentence Investigation Report that Petitioner denied the statements made by Rhodes at trial. **S. Tr. Vol II, page 10; ECF #790.**

During day two of the trial and on direct examination and being led by the Government, Rhodes testified as follow:

AUSA: Okay. And so if you could estimate, about how much crack cocaine, whether for trade or for money, would you get from Mr. Phyfier a week? In those (sic) two to four times, you said you would buy from him, about how much crack cocaine?
LTTLE: I'd get like probably an ounce and a half or 2 ounces.
AUSA: And again, you said that was every week for about 10 years?
LITTLE: Yes, ma'am.

**T. Tr. Vol. II, page 129.**

From these estimates and "probable quantities", 29,540.5 grams of crack cocaine[3] was attributed to Petitioner from Rhodes alone. Rhodes supposedly began purchasing crack cocaine from Petitioner in 2008 and the relationship continued until 2018. Petitioner was arrested on or about October 2017 and remained in continued custody since his arrest; therefore, one year cannot be counted. Next, more crack cocaine was attributed to Petitioner by Rhodes than Petitioner obtained from his two suppliers, George Edward Jones, III and Darnez Jones. Even though, George and Darnez were suppliers of cocaine and crack cocaine to Petitioner, 4.5 ounces of cocaine was attributed to Petitioner

---

[3] 29,540.5 grams of crack cocaine was derived from 1,040 ounces of crack cocaine over a ten-year period starting in 2008.

as coming from George Jones; and, Darnez Jones attributed 186 grams of cocaine to Petitioner.

In opposing this claim, the Response stated that Petitioner has not presented any evidence that the statements of Ernest Rhodes were untrue; and, that the jury was able to consider Rhodes' trial testimony and Petitioner's and found Petitioner guilty. Thus, the Response asserted that appellate counsel provided effective assistance of counsel; since, Petitioner could not show that a different result would have occurred if counsel had raised the issue on appeal. **CECF # 10 at 15-16.**

First, Petitioner *opposes* the Response; because, the Response did not respond to the claim that was raised. Petitioner stated that a sentencing matter, relevant conduct, that had an affect on the ultimate sentence Petitioner would receive was not resolved after he made an objection to the relevant conduct attributed to him by Government's witness Rhodes.

USSG Section 6A1.3 provides a framework for the sentencing hearing to include (a) when any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy; and, (b) the court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32 (i), Fed. R. Crim. P.

Under Rule 32 (i) (3) (B), when a defendant disputes a portion of the presentence report ("PSR"), the court must either "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." In either case, the court "must append a copy of the court's determinations under th[e] rule to any copy of the presentence report made available to the Bureau of Prisons [BOP]." Fed. R. Crim. P. 32(i)(3)(C). "[F]or any such controverted factual matter the district court should state on the record how it has treated the matter." United States v. Hill, 766 F.2d 856, 858 (4th Cir. 1985); see also United States v. Lopez, 907 F.2d 1096, 1101 (11th Cir. 1990) ("When a court declines to resolve a factual challenge to a [PSR], it must expressly set out in writing the disputed facts that it did not resolve."). "Strict adherence to the dictates of [the rule] is essential because the rule helps ensure that future decisions about a defendant's penal treatment are based on a fair and accurate [PSR]". Id.; see also United States v. Murchison, 865 F.3d 23, 27 (1st Cir. 2017) ("[T]ogether, Rule 32 and the BOP's system work to ensure that the BOP classifies and processes sentenced offenders with the benefit of all relevant and informative sentencing material.").

The District Court did not resolve the dispute on the quantity of crack that should be attributed to Petitioner from cooperating witness Ernest Rhodes. Goggans provided ineffective assistance of counsel on appeal for not appealing the issue. Goggans' deficient performance prejudiced Petitioner; because, unreliable and disputed evidence were used to determine his advisory guideline sentencing range.

## CONCLUSION

21

Petitioner respectfully requests that his convictions on Counts 1 thru 10 be vacated and a new trial be ordered.

Date: 12-15-21

*Cyrus Phyfier*

Cyrus Phyfier # 17322-002
FMC Butner/POB 1600
Butner, NC 27509

## CERTIFICATE OF SERVICE

*************************

I certify that on 5th day of December 20 21 I served a copy of this Motion in Opposition to the Motion to Dismiss on OFFICE OF THE US ATTORNEY,   at 131 Clayton St., Montgomery, AL 36104        ATTN: Gregory O. Griffin Jr, AUSA, by placing same in the U.S. Mail, postage prepaid.

*Cyrus Phyfier*

Cyrus Phyfier, pro se

## CERTIFICATE OF SERVICE

Cyrus Phyfier #17322-002-3B-211
FMC Butner
P.O. Box 1600
Butner, NC 27509



Raleigh NC
PKDC 276   AESM 7
FRI 17 DEC 2021  PM

Office of the Cle
United States District Co
Middle District of Alab
1 Church Street, Suite B
Montgomery, AL 36104-