IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CYRUS PHYFIER,                          )
                                        )
        Petitioner,                     )
                                        )
v.                                      )    Case No. 2:21-cv-480-MHT-SMD
                                        )              (WO)
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Cyrus Phyfier is before the court with a *pro se* motion to vacate, set aside, or correct

sentence under 28 U.S.C. § 2255. Doc. 1.[1] As discussed below, the Magistrate Judge

recommends that Phyfier's § 2255 motion be DENIED without an evidentiary hearing and

that this case be DISMISSED with prejudice.

## I.    BACKGROUND

In June 2018, Phyfier was named in an indictment charging him with multiple drug

and gun charges and charging him and others with conspiracy to distribute drugs. Crim.

Doc. 143. When his case came to trial in August 2019, Phyfier opted to represent himself.

On August 23, 2019, the jury found him guilty of conspiracy to possess and distribute

powder cocaine and crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count

---

[1] References to documents filed in this civil action are designated as "Doc." References to
documents filed in the underlying criminal case (Case No. 2:17-cr-482-MHT-SMD) are designated
as "Crim. Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF
filing system and may not correspond to pagination on the copies as presented for filing.

One); five counts of distribution of crack cocaine, in violation of § 841(a)(1) (Counts Two through Six); one count of distribution of marijuana, in violation of § 841(a)(1) (Count Seven); two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Eight & Ten); and one count of possession of a firearm to further a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Nine). Crim. Doc. 629. Phyfier continued to represent himself at sentencing, and on December 5, 2019, the district court sentenced him to a total of 360 months in prison. Crim. Doc. 790.

After Phyfier filed a *pro se* notice of appeal, the court appointed counsel to represent him in the appeal. Crim. Docs. 765 & 776. On appeal, Phyfier argued that (1) the district court erred by denying his motion to suppress evidence found in a protective sweep of the apartment where he was arrested; (2) the district court erred in granting the government's motion *in limine* to prevent him from introducing evidence of his state pardon and a pistol permit erroneously issued to him; (3) his § 922(g)(1) convictions were invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019); and (4) the admission of other-bad-acts evidence at trial was plain error. Doc. 3 at 4–73. On January 5, 2021, the Eleventh Circuit issued an opinion upholding Phyfier's convictions and sentence. *United States v. Phyfier*, 842 F. App'x 333 (11th Cir. 2021) (per curiam).

Phyfier filed this § 2255 motion on July 16, 2021. Doc. 1. In it, he claims his counsel on direct appeal was ineffective for:

(1)     failing to argue under *Faretta v. California*, 422 U.S. 806 (1975), that his waiver of his right to counsel was not knowing and voluntary and that the district court erred by allowing him to represent himself;

(2)     failing to challenge the sufficiency of the evidence based on the prosecutor's leading questions to the government's witnesses;

(3)     failing to pursue a challenge to the drug amount attributed to him at sentencing; and

(4)     failing to challenge the "illegal" sentence imposed for Count Seven of the indictment.

Doc. 1 at 15–26.

The government argues that Phyfier's ineffective-assistance claims lack merit and provide him no basis for § 2255 relief. Doc. 10.

## II.     DISCUSSION

### A.     Legal Standard

A prisoner may have relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States, (2) exceeds its jurisdiction, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The burden of establishing that vacatur of a conviction

or sentence is appropriate falls upon the petitioning prisoner. *See Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

### B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to prevail on an ineffective-assistance claim, a petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced him. *See* 466 U.S. at 687. Performance is deficient when it falls below "an objective standard of reasonableness and [is] outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted). Generally speaking, to establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

Unless a petitioner satisfies the showings required under both the performance and prejudice prongs of *Strickland*, relief on an ineffective-assistance claim should be denied. *Id.* at 687. Once a court decides that one of the requisite showings under *Strickland* has not been made, it need not decide whether the other one has been. *Id.* at 697; *see Clark v. Comm'r, Alabama Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To assess the performance of appellate counsel, a court applies *Strickland*'s two-prong, deficient performance/prejudice test. *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020). To establish ineffective assistance of appellate counsel, a petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] 'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

### C.    Phyfier's Claims

#### 1.    *Faretta* and Waiver of Right to Counsel

Phyfier, who represented himself at trial and at sentencing, contends that his appellate counsel rendered ineffective assistance by failing to raise a claim on appeal under *Faretta v. California*, 422 U.S. 806 (1975). Doc. 1 at 15–18. He maintains that the district court did not fully advise him of the hazards of self-representation, as provided in *Faretta*. As a consequence, he says, his waiver of his right to counsel was not knowing and voluntary, and the district court erred in allowing him to represent himself. *Id.* at 16–18.

According to Phyfier, there was "a reasonable probability that a *Faretta* claim would have succeeded" had one been raised by appellate counsel. *Id.* at 18.

In *Faretta*, the Supreme Court recognized that a criminal defendant may exercise a right to self-representation by making a knowing and voluntary waiver of the right to counsel. 422 U.S. at 833–34. "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a pre-trial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991). This so-called "*Faretta* hearing" should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing, and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (citation omitted). A *Faretta* hearing is "a means to the end" of ensuring that a defendant's waiver is knowing and voluntary. *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (citation omitted). The lack of a *Faretta* hearing "is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the *Faretta* standard will be satisfied." *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002).

In *Fitzpatrick v. Wainwright*, 800 F.2d 1057 (11th Cir. 1986), the Eleventh Circuit articulated so-called "*Fitzpatrick* factors" for consideration in determining whether a defendant executed a knowing and voluntary waiver of the right to counsel: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers before trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and possible penalties; (4) the defendant's

understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which standby counsel aided the defendant; (7) whether the waiver of counsel resulted from mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial. 800 F. 2d at 1065–67; *see Strozier v. Newsome*, 871 F.2d 995, 998 (11th Cir. 1989). All *Fitzpatrick* factors need not point in the same direction. *See Stano v. Dugger*, 921 F.2d 1125, 1145 (11th Cir. 1991).

Although a defendant's waiver must be knowing and voluntary when he makes it, the court may "look to subsequent events" to find "evidence of what would have been true when a defendant first waived his rights." *Stanley*, 739 F.3d at 646; *see also Jones v. Walker*, 540 F.3d 1277, 1295 (11th Cir. 2008) ("We review Jones' performance during trial, not because we wish to determine whether his trial conduct was good or bad, but because his performance at trial provides some circumstantial evidence of what he knew at the time he waived his right to counsel.").

### a. *In Camera* Hearing and Phyfier's Request to Proceed *Pro Se*

Shortly before Phyfier's trial was scheduled to commence, the district court was notified that Phyfier had told his then-counsel, attorney David Vickers, that he wanted to proceed *pro se*. Doc. 10-2 at 2. The district court held an *in camera* hearing to determine if Phyfier would be allowed to represent himself. At the outset of the hearing, the district court asked Phyfier if he indeed wanted to represent himself, to which Phyfier responded yes. *Id.* The court then asked Phyfier a series of questions regarding his age, his level of

education, and his ability to read, write, and understand the English language. *Id.* at 3–5. The court also asked Phyfier about his ability to understand the proceedings, whether he was under the influence of drugs or alcohol, and whether he was suffering from a mental or physical impairment affecting that ability. *Id.* After hearing Phyfier's answers to these questions, the court found he was competent. *Id.* at 5. The court again asked Phyfier if he wanted to represent himself, to which Phyfier again responded yes. *Id.*

Inquiring further into Phyfier's request for self-representation, the district court reminded him of his right to counsel at every stage of the proceedings, observing that, up that point, Phyfier had been represented by court-appointed attorney Vickers. Doc. 10-2 at 5–6. Phyfier told the court he believed Vickers was ineffective and that he was unhappy with Vickers for failing to file motions he had requested and to provide him with discovery materials he had asked for. *Id.* at 5–7. Vickers, who was present at the hearing, told the court that he had met with Phyfier "probably 30 or more" times, that he had discussed all relevant discovery materials with Phyfier, and that Phyfier was displeased with him for failing to provide him with copies of discovery materials he could not legally copy. *Id.* at 7–8. The district court then referred to an earlier hearing before the magistrate judge, in which the magistrate judge had denied Phyfier's motion to remove Vickers as his attorney on grounds similar to those Phyfier alleged at the *in camera* hearing. *Id.* at 8; Crim. Doc. 603. After stating it was deferring to the magistrate judge's ruling, the district court told Phyfier he could either proceed to trial with Vickers as his counsel, or he could represent himself. Doc. 10-2 at 8. Phyfier stated that he would rather represent himself. *Id.* at 8–9.

The district court then explained the charges in the indictment to Phyfier and the penalties he faced if convicted, including any applicable sentencing enhancements. Doc. 10-2 at 9–21. Phyfier affirmed to the court that he understood these matters. *Id*. The court also advised Phyfier that the sentencing guidelines would be applied to him if convicted, that the court could not tell him how to try his case if he represented himself, and that the federal rules of evidence and criminal procedure would govern his case and would not be relaxed for his benefit. *Id*. at 11–12. Phyfier indicated to the court that he understood these matters. *Id*.

At the end of this colloquy, the district court asked Phyfier if he still wished to represent himself, to which Phyfier responded (again) yes. Doc. 10-2 at 21. The court cautioned Phyfier that a trained lawyer could defend him far better than he could defend himself, particularly since he had indicated he was unfamiliar with the law or with the rules of evidence and court procedure. *Id*. The court then strongly urged Phyfier not to represent himself, although reminding him he had a constitutional right to do so.[2] *Id*. After giving Phyfier these warnings, the court once again asked him if he wanted to represent himself, and Phyfier again answered yes. *Id*. at 21–22. The court asked Phyfier if anyone had promised him anything or forced him to give up his right to an attorney, to which Phyfier

---

[2] The record reflects that the district court cautioned Phyfier as follows:

> Okay. Now, I must advise you that in my opinion, a trained lawyer would defend you far better than you could defend yourself, and I also want to advise you that I think it is unwise of you to try to represent yourself. You are not familiar with the law; you are not familiar with court procedure; you are not familiar with the rules of evidence; and therefore I strongly urge you not to represent yourself.

Doc. 10-2 at 21.

answered no and affirmed that his decision to proceed *pro se* was voluntary. *Id.* at 22. The court then found that Phyfier had knowingly and voluntarily waived his right to counsel and stated it would permit Phyfier to represent himself. Doc. *Id.* at 21. However, the court advised Phyfier that it was appointing Vickers to act as his standby counsel. *Id.* The court informed Phyfier that, as standby counsel, Vickers could assist him by answering any legal questions he might have during the proceedings and that Phyfier could consult with Vickers if he so chose, but he did not have to consult with Vickers if he didn't want to. *Id.* The court told Phyfier that if he wanted Vickers to step in as his attorney during the proceedings, he could do so. *Id.* at 23.

Phyfier represented himself at trial and at sentencing, with Vickers serving as standby counsel during both proceedings. *See* Crim. Doc. 791 at 50–52.

### b.   *"Fitzpatrick* Factors"

The transcript of the *in camera* hearing reflects that Phyfier was warned of the hazards of self-representation, in compliance with *Faretta*, and that he chose to proceed *pro se* despite being warned of those hazards. Even so, Phyfier argues that most of the "*Fitzpatrick* factors," *see Fitzpatrick*, 800 F.2d at 1065–67," support a finding that he did not voluntarily and knowingly waive his right to counsel. Doc. 1 at 16–18. Examining the record, with the contents of the *Faretta* hearing and the *Fitzpatrick* factors in mind, the undersigned finds that Phyfier knowingly and voluntarily waived his right to counsel.

1. <u>Age, education, and health</u>. Phyfier was 51 years old at the time of trial, had attended school until the twelfth grade, had obtained a GED, and had no history of mental-health issues. Doc. 10-2 at 3–5; Doc. 10-1 at 24. There is no indication in the record that

he suffered from any mental or physical health problems that may have affected his ability to comprehend the proceedings. This *Fitzpatrick* factor weighs in favor of finding a voluntary waiver by Phyfier and does nothing to undermine a finding of voluntariness. *See Nelson v. Alabama*, 292 F.3d 1291, 1301 (11th Cir. 2002) (concluding, in a case under 28 U.S.C. § 2254, that nothing in the defendant's history undermined the reasonableness of the state court's determination that defendant's waiver was valid where the defendant was 50 years old, had a tenth-grade education, and had obtained a GED).[3]

2. <u>Contact with lawyers before trial</u>. Before proceeding to trial *pro se*, Phyfier had extensive contact with attorney Vickers, although he informed the court that he was dissatisfied with Vickers's representation and sought to have Vickers replaced as his counsel. Phyfier characterizes his contact with Vickers as "very rocky and intense." Doc. 1 at 17. Even so, Vickers represented Phyfier until the first day of trial and thereafter served as his standby counsel. Vickers's service as Phyfier's counsel before trial "likely exposed [Phyfier] to the complexity of his case and the legal process." *See Stanley*, 739 F.3d at 647–48 (noting *pro se* defendant's representation by counsel until the first day of trial); *Fitzpatrick,* 800 F.2d at 1066 (defendant's "significant contact" with an attorney before trial, even though he never actually retained counsel, was enough to satisfy this factor). This *Fitzpatrick* factor weighs in favor of a valid waiver by Phyfier.

---

[3] At the *in camera* hearing, Phyfier told to the district court that he needed knee and hip replacements and was in physical pain from these conditions. Doc. 10-2 at 4–5. However, Phyfier told the court that the pain was not impairing his ability to understand the proceedings. *Id.* at 5.

3. <u>Knowledge of nature of charges, possible defenses, and penalties</u>. While Phyfier may not have been well versed in the law or rules of procedure, the district court, at the *in camera* hearing, fully described the charges and possible punishments to Phyfier and advised him that he would be expected to comply with the federal rules. Doc. 10-2 at 9–21. Thus, the record indicates Phyfier understood the seriousness and complexity of the charges against him when seeking to proceed *pro se*. Further, Phyfier had been through at least two prior criminal proceedings involving serious drug-distribution charges, which would have allowed him to better understand the charges, defenses, and penalties in this case. The undersigned notes that, before the sentencing hearing, Phyfier filed *pro se* objections to several aspects of the presentence report. *See* Doc. 10-1 at 30–33. These *pro se* objections indicate that Phyfier understood at least some complexities of his case. *See Fitzpatrick*, 800 F.2d at 1067. Because the record indicates Phyfier understood the nature of the charges against him and could present certain legal arguments in his defense, this *Fitzpatrick* factor also indicates a valid waiver.

4. <u>Understanding of rules of procedure, evidence, and courtroom decorum</u>. Phyfier may have had a limited legal knowledge, but the district court appointed Vickers as standby counsel to assist him with technical and procedural questions. A defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel. *Faretta*, 422 U.S. at 835–36. Instead, this factor favors a valid waiver when a defendant "understood that rules do exist to govern the procedure of a trial, the introduction of evidence and the behavior of advocates and . . . that he would be bound by those rules." *United States v. Kimball*, 291 F.3d 726, 731 (11th Cir. 2002). Here, the district court

informed Phyfier that the federal rules of evidence and criminal procedure would govern his case and would not be relaxed for his benefit. Doc. 10-2 at 11–12.

5. <u>Experience in criminal trials</u>. Phyfier had a substantial criminal history, including for drug-distribution convictions with lengthy prison terms, indicating his significant experience with criminal proceedings. *See* Doc. 10-1 at 15–19. He maintains, however, that because only one of his prior convictions followed a jury trial at which he was represented by counsel (his other convictions resulting from counseled guilty pleas), his experience with the criminal justice system was "limited." *Id.* at 18. Nevertheless, Phyfier's involvement in numerous prior criminal proceedings afforded him an upfront view of the criminal justice system and should have impressed upon him the seriousness and potential complexity of defending against the charges in this case. This *Fitzpatrick* factor weighs in favor of a valid waiver by Phyfier. *See Greene v. United States*, 880 F.2d 1299, 1304 (11th Cir. 1989) (a defendant's "substantial experience with the criminal justice system" is "a factor which weighs in favor of a finding of effective waiver").

6. <u>Appointment of and assistance from standby counsel</u>. When granting Phyfier's request to proceed *pro se*, the district court appointed Vickers as standby counsel to assist Phyfier with any advice he might seek about the case. Although how much Phyfier sought assistance from Vickers during the trial cannot be determined from the trial record, the court notes Vickers remained available to assist Phyfier through the trial and sentencing.

7. <u>Mistreatment or coercion</u>. Phyfier does not argue he was subjected to any coercion or mistreatment in waiving his right to counsel, and the record contains no evidence that Phyfier was mistreated or coerced into waiving his right to counsel.

8. <u>Efforts to manipulate the events of the trial</u>. The court finds no clear evidence that Phyfier attempted to manipulate events by invoking the right to self-representation on the day of the trial. The court considers this to be a neutral factor is assessing the voluntariness of Phyfier's assertion of his right to self-representation.

Considering all the *Fitzpatrick* factors and the record as a whole, this court finds Phyfier knowingly and voluntarily elected to represent himself. It is clear to the undersigned, based upon an extensive review of the record, that Phyfier understood the choices before him and the potential dangers of representing himself in his criminal proceeding. As such, his waiver of counsel was valid. And because that waiver was valid, Phyfier's appellate counsel was not ineffective for failing to raise a *Faretta* claim on appeal. Counsel is not ineffective for failing to raise a claim that lacks merit. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Because Phyfier fails to establish deficient performance by his appellate counsel or resulting prejudice, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 2.   "Leading Questions" and Sufficiency of the Evidence

Phyfier claims his appellate counsel was ineffective for "failing to appeal the sufficiency of the evidence for all counts due to the leading inquiries [of witnesses] by the Government on direct." Doc. 1 at 18. According to Phyfier, because the prosecutor asked government witnesses what he says were impermissibly leading questions on direct examination (to which Phyfier did not object at trial), the government failed to adduce sufficient evidence for the jury to find him guilty of any offense. *Id*. at 18–23.

Phyfier fails to demonstrate that the district court allowed impermissibly leading questions by the government. Many questions he complains of were not actually leading. *See* Doc. 1 at 19–21. He points to no long narrative questions by the prosecutor, and any allegedly leading questions he refers to could have easily been corrected by simply rephrasing the questions. There is nothing in the record "from which one could draw a conclusion that the [prosecutor] was attempting to use the leading questions to improperly communicate information to the jury." *United States v. Stuckey*, 253 F. App'x 468, 489 (6th Cir. 2007). Further, as the Eleventh Circuit noted in its opinion in Phyfier's appeal, "the government presented sufficient evidence uninfected by error to support the guilty verdict." *Phyfier*, 842 F. App'x at 338. The Eleventh Circuit stated:

>  At trial, the government presented recorded phone calls and video surveillance that showed Phyfier setting up, and engaging in, multiple drug deals. The government also presented testimony from witnesses involved in those drug deals who testified that they either bought drugs from Phyfier or sold him drugs. Indeed, Phyfier himself admitted that he sold drugs in 2007 and stated that his charges should have been dismissed under the statute of limitations. The government also presented evidence that showed Phyfier kept firearms at his mother's home, where he conducted his drug transactions. Additionally, the government offered sufficient evidence to show that Phyfier knew that he was a convicted felon and knew that he possessed a firearm.
>
> . . . .
>
> Accordingly, because the government presented sufficient evidence free from error to support the jury's guilty verdict, we also affirm as to this issue.

*Phyfier*, 842 F. App'x at 338–39.

Because Phyfier cannot show that the outcome of his appeal would have been different had his appellate counsel raised this issue, he fails to satisfy the prejudice prong of *Strickland*. He is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   Drug Amount Attributed as Relevant Conduct

Phyfier claims his appellate counsel was ineffective for failing to pursue a challenge to the drug amount attributed to him as relevant conduct at sentencing. Doc. 1 at 23–26.

Phyfier's argument here boils down to a claim that the district court should have accepted his own assertions about the amount of crack cocaine he sold to codefendant Ernest Rhodes over the trial testimony of Rhodes on this matter. *See* Doc. 1 at 23–24. Rhodes testified that he purchased one and a half to two ounces of crack cocaine from Phyfier two to three times a week for a duration of ten years. Crim. Doc. 796 at 129–30. The drug amounts attributed to Phyfier in the presentence report ("PSR") included his drug sales to Rhodes. *See* Doc. 10-1 at 13. Phyfier disputed this matter at sentencing. *Id*. at 30; Crim Doc. 790 at 11–13.

Phyfier fails to show that a challenge by his counsel on appeal to the drug amount attributed to him in the PSR would have prevailed. Such a challenge would have required the appellate court to make a credibility determination finding Phyfier's own self-serving assertions to be more credible than the testimony of Rhodes (which was accepted in the PSR). Further, and significantly, the drug amounts attributed to Phyfier did not control the sentence imposed upon him. Instead, his sentence was determined by findings he was an armed career criminal subject to the provisions of 18 U.S.C. § 924(e) and a career offender under U.S.S.G. § 4B1. *See* Doc. 10-1 at 14, 19, 25. Thus, for purposes of the imposed

sentence, any alleged error in the PSR's calculation of drug amounts attributable to Phyfier would be harmless. Counsel, therefore, was not ineffective for failing to raise this claim on appeal because it could not have resulted in any relief for Phyfier.

Phyfier also asserts that his appellate counsel was ineffective for failing to argue that the district court violated Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure because it did not expressly resolve his objection at sentencing disputing the PSR's finding regarding the amount of crack cocaine he sold to Rhodes. Doc. 1 at 25–26. Rule 32 sets forth sentencing procedures, including the procedure by which courts consider PSRs and any objections thereto. Rule 32(i)(3)(B) provides that for any disputed or controverted portion of the PSR, the district court must either rule on the dispute "or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

As noted above, the drug amount attributed to Phyfier ultimately did not control his sentencing. The district court made this same determination at the sentencing hearing, finding, after noting that Phyfier disputed (among other things) the amount of crack cocaine he sold to Rhodes:

> Having made findings as to the objections to the pre-sentence report, the court finds that an offense level is not applicable in this case.

Crim. Doc. 790 at 60–61. The district court's finding constituted a determination that it was unnecessarry to resolve Phyfier's objection disputing the amount of crack cocaine

attributed to him in the PSR "because the matter will not affect sentencing."[4] *See* Fed. R. Crim. P. 32(i)(3)(B). Thus, the district court complied with Rule 32(i)(3)(B). As such, appellate counsel was not ineffective for failing to raise such a claim. *See Winfield*, 960 F.2d at 974 (counsel not ineffective for failing to raise a meritless claim).

For the reasons discussed above, Phyfier is entitled to no relief on this claim of ineffective assistance of counsel.

### 4.    "Illegal" Sentence for Count Seven

Finally, Phyfier claims his appellate counsel was ineffective for failing to argue that the sentence imposed for Count Seven of the indictment—distribution of marijuana in violation of 21 U.S.C. § 841(a)(1)—was "illegal" because, he says, it exceeded the applicable statutory maximum. Doc. 1 at 26.

Phyfier's claim here is based on his erroneous assertion that he was sentenced to 300 months in prison on Count Seven. However, Phyfier was sentenced to 120 months in prison on Count Seven. Crim Doc. 763 at 3. That sentence was ordered to run concurrently with concurrent 300-month sentences imposed on Counts One through Six, Eight, and Ten.[5] *Id*. Section 841(b)(1)(D) provides a statutory maximum sentence of 60 months for § 841(a)(1) convictions, and with a properly filed § 851 information (as in Phyfier's case),

---

[4] Ordinarily, drug amounts attributed to a defendant as relevant conduct affect the defendant's offense level. However, the district court found that Phyfier's offense level did not affect his sentence ("the court finds that an offense level is not applicable in this case").

[5] Phyfier was sentenced to 60 months in prison on Count Nine, to be served consecutively to the terms on Counts One through Eight and Ten. Crim. Doc. 763 at 3.

the statutory maximum is 120 months.[6] Phyfier's 120-month sentence on Count Seven did not exceed the applicable statutory maximum, and therefore it was not "illegal." His appellate counsel was not ineffective for failing to raise this meritless claim, and he is entitled to no relief here.

## III.    CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that Phyfier's § 2255 motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

It is further ORDERED that objections to this Recommendation be filed no later than **May 29, 2024**. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the district court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. 11th

---

[6] A defendant convicted of violating 21 U.S.C. § 841(a)(1) is subject to a sentence enhancement for prior felony drug offense convictions if, before trial or a guilty plea, the government files an information under 21 U.S.C. § 851 giving written notice of the prior convictions to be relied upon. Section 841(b)(1)(B) provides for enhancement of a defendant's sentence to a mandatory minimum term of not less than 10 years' (i.e., 120 months) imprisonment if he committed the violation of § 841(a)(1) after a prior conviction for a felony drug offense.

Cir. R. 3-1; *see Resolution Trust Corp. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149

(11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

    DONE this 15th day of May, 2024.


                /s/ Stephen M. Doyle
                STEPHEN M. DOYLE
                CHIEF U.S. MAGISTRATE JUDGE